

EXHIBIT
1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| RANDY PORTER,<br>Individually, and on behalf of<br>himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BASF CORPORATION,<br>a Delaware Corporation,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

Civil Action No. 1:19-cv-01352

### SETTLEMENT AGREEMENT AND RELEASE

      This Settlement Agreement and Release ("Agreement") is entered into by and between Plaintiff Randy Porter (the "Class Representative"), on behalf of himself and all members of the conditionally certified class that have opted into the above-style lawsuit; and Defendant BASF Corporation ("BASF"); and Master Builder Solutions US LLC and Master Builders Solutions Construction Systems US, LLC (together "MBS"; collectively with BASF, "Defense Entities").

### I.
### RECITALS

      1.    The Class Representative filed the above-styled collective action lawsuit against BASF on May 10, 2019 (the "Lawsuit"). The Class Representative asserts in the Lawsuit that, *inter alia*, BASF failed to pay him and all similarly situated operators at BASF's Brighton, Colorado facility for all compensable time in violation of the Fair Labor Standards Act ("FLSA") and the Colorado Wage Claim Act and Minimum Wage Order (together, "CWCA").

      2.    MBS is the successor-in-interest to BASF with respect to the Brighton, Colorado facility. MBS has full authority to resolve the Lawsuit on behalf of itself and BASF.

      3.    Class Counsel (as defined below) has made a thorough and independent investigation of the facts and law related to the allegations in the Lawsuit. In agreeing to the terms of this Agreement, Class Counsel has considered: (a) the facts developed during the litigation of the Lawsuit and the law applicable thereto; (b) the facts developed from speaking with the Settlement Class Members (as defined below); (c) the attendant risks of continued litigation and the uncertainty of the outcome of the claims alleged against the Defense Entities; and (e) the desirability of consummating this settlement according to the terms of this Agreement. The Class Representative has also concluded that the terms of this Agreement are fair, reasonable, and adequate, and that it is in the best interest of the Settlement Class Members, including the Class

Representative, to settle their claims against the Defense Entities pursuant to the terms of this Agreement.

4.      The Defense Entities deny the allegations in the Lawsuit and deny that they engaged in any wrongdoing or that they violated any law in any respect, including, but not limited to, the FLSA and the CWCA.  The Defense Entities are entering into this Agreement because, among other things, it will eliminate the burden, risk, and expense of further litigation.

5.      Neither this Agreement nor any document referred to herein, nor any action taken to carry out this Agreement, may be used in any way as an admission, concession, or indication by or against the Defense Entities of any fault, wrongdoing, or liability whatsoever.

6.      The Settling Parties (as defined below) recognize that the Agreement will not become operative until the Effective Date (as defined below).  In the event the Court does not enter an order approving the Agreement, this Agreement (except for those provisions relating to non-admissibility, as set forth in Section 10.3, and no admission of liability as set forth above) shall be deemed null and void *ab initio*, shall be of no force or effect whatsoever, and shall not be referred to or utilized by any of Settling Parties for any purpose whatsoever.  Further, the negotiation, terms, and entry of this Agreement shall remain subject to the provisions of Federal Rule of Evidence 408, and any other applicable analogous rules of evidence.

7.      This Agreement is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Lawsuit, the Released Claims (as defined below), and the Class Representative's Released Claims (as defined below) on behalf of the Settlement Class Members upon and subject to the terms and conditions set forth herein.

8.      In consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Settling Parties, IT IS HEREBY AGREED, by and between the undersigned, subject to the conditions set forth herein, that the claims of the Settlement Class Members against the Defense Entities shall be settled, compromised, and dismissed, on the merits and with prejudice, and that the Released Claims and the Class Representative's Released Claims shall be finally and fully compromised, settled, and dismissed as to the Released Parties (as defined below).

## II.
### DEFINITIONS

In addition to the terms defined elsewhere in the Agreement, the following terms used in this Agreement shall have the meanings ascribed to them below:

1.      "Class Counsel" means JACKSON, SHIELDS, YEISER, HOLT, OWEN & BRYANT and its attorneys, and attorney Brian D. Gonzales who warrant and represent that no other law firms or attorneys have served or are serving in any capacity as Class Counsel in the Lawsuit.

2.      "Class Period" means three years prior to the date that each Settlement Class Member filed a notice of consent to join the Lawsuit.

2

3.      "Class Representative's Released Claims" means any and all claims and causes of action (except for claims arising specifically from a breach of this Agreement), whether known or unknown, arising out of or related to any events or transactions involving the Released Parties that precede the execution date of this Agreement, including, but not limited to, the Class Representative's employment with BASF. The claims and causes of action released by the Class Representative include, but are not limited to, the following: contract claims; claims for salary, benefits, bonuses, severance pay, or vacation pay; claims sounding in negligence or tort; fraud claims; claims for medical bills; all matters in law, in equity, or pursuant to statute, including damages, attorneys' fees, costs, and expenses; wrongful termination claims; discrimination claims; harassment claims; retaliation claims; whistleblower claims (to the fullest extent they may be released under applicable law) and, without limiting the generality of the foregoing, all claims, including, but not limited to, claims arising under 42 U.S.C. § 1981; the Genetic Information Nondiscrimination Act; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*; the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*; 29 U.S.C. § 200 *et seq.*, the FLSA, the CWCA, the Colorado Anti-discrimination Act, the Colorado Lawful Off-Duty Activities statute, the Colorado Wage Equality Regardless of Sex Act, The Colorado Overtime and Minimum Pay Standards Order, the Colorado Labor Relations Act, and the Colorado Labor Peace Act; the wage/hour laws and regulations of any state; and any other federal, state, or local law, statute, or ordinance affecting or related to the Class Representative's employment with the BASF and/or the Released Parties. This release does not include waiver of any right to vested benefits under the written terms of the Company 401(k) Plan, claims for unemployment or workers' compensation benefits, any medical claim incurred during the Class Representative's employment that is payable under applicable medical plans or an employer-insured liability plan, claims arising after the date on which this Agreement is executed, or claims that are not otherwise waivable under applicable law.

4.      "Cost and Fee Award" means the award of attorneys' fees and costs to Class Counsel for the services provided to the Settlement Class Members. The Cost and Fee Award will compensate Class Counsel for all work performed in the Lawsuit as of the date of this Agreement as well as all of the work remaining to be performed through the Effective Date, including, but not limited to, documenting the Agreement and securing final Court approval of the Agreement. The Cost and Fee Award shall be paid to Class Counsel from the Maximum Settlement Amount.

5.      "Court" means the United States District Court for the District of Colorado.

6.      "Effective Date" means the date on which the Court enters a final order approving this Agreement.

7.      "Maximum Settlement Amount" means the maximum amount that MBS shall pay under the terms of this Agreement in exchange for the release of all Released Claims by the Settlement Class Members and the Class Representative's Released Claims, which is the sum of Thirty-Two Thousand Five Hundred US Dollars ($32,500.00), excluding the Defense Entities' share of FICA and FUTA payroll taxes and applicable taxes under state law. In no event shall the Maximum Settlement Amount exceed this sum, plus the Defense Entities' share of FICA and FUTA payroll taxes.

3

8.      "Net Settlement Amount" means the Maximum Settlement Amount minus the Cost and Fee Award, the Service Award (defined below), and all applicable payroll taxes and withholdings. The Settling Parties acknowledge that all of these amounts are subject to the Court's approval.

9.      "Defense Counsel" means Reed Smith LLP and its attorneys.

10.     "Released Claims" mean any and all state, local, or federal claims, obligations, demands, actions, rights, causes of action, and liabilities, whether known or unknown, against the Released Parties for alleged unpaid overtime or other wages, miscalculation of bonus payments, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution, or other compensation and relief arising under the FLSA, the CWCA, or any other state or local wage-related law with respect to the time that the Settlement Class Members were employed by BASF, MBS, and/or the Released Parties.

11.     "Released Parties" mean BASF, MBS, and each of their respective current, former, and future affiliates, investors, parents, subsidiaries, related entities, predecessors, successors, divisions, joint ventures and assigns, and each of their past or present directors, officers, employees, partners, members, employee benefit plan administrators and fiduciaries, trustees, principals, agents, insurers, co-insurers, re-insurers, managers, shareholders, attorneys, and personal or legal representatives, in their individual and corporate capacities.

12.     "Settlement Class Members" means the Class Representative and all other individuals who have filed a notice of consent to join the Lawsuit. A comprehensive list of all Settlement Class Members is attached as Exhibit 1.

13.     "Settling Parties" means the Defense Entities and the Settlement Class Members.

14.     "Settlement Payment(s)" means the payments that the Settlement Class Members will receive. A comprehensive list of the Settlement Payment(s) due to each Settlement Class Member is attached hereto as Exhibit 2.

### III.
### THE SETTLEMENT

**1.      Consideration to Settlement Class Members**

1.1.      The Settlement Class Members shall receive Settlement Payments from Class Counsel. Settlement Payments shall be in the amounts set forth in Exhibit 2.

1.2.      The Settlement Payments to the Settlement Class Members shall be composed of two separate payments. The first payment shall constitute an amount equal to fifty percent (50%) of the total payments to the Settlement Class Members and shall be deemed payment in settlement of claims for alleged unpaid overtime or other wages and shall be subject to appropriate deductions and withholdings for wages by the Defense Entities. A Form W-2 shall issue for the first payment. The second payment shall constitute the remaining fifty percent (50%)

4

of the Settlement Payments to the Settlement Class Members and shall be deemed payment in settlement of claims for alleged liquidated damages, interest, penalties, and all other non-wage income and will be paid by MBS subject to a Form 1099.

   1.3. Class Counsel shall issue the Settlement Payments to the Settlement Class Members.

**2.**  <u>**Taxes**</u>

   2.1. The portion of each Settlement Class Member's Settlement Payment that is allocated to the settlement of claims for alleged unpaid wages: (a) shall be subject to required withholdings and deductions, which will result in the net amount paid being less than the gross amount; and (b) shall be reported in the year of payment as wage income to the Settlement Class Members on a Form W-2 and on such other state or local tax reporting forms as may be required by law. The portion of the Settlement Class Member's Settlement Payment that is allocated to all other claims, including, without limitation, claims for alleged statutory and civil penalties, liquidated damages, interest, and all other non-wage income: (a) shall not be subject to required withholdings and deductions, which will result in the net amount paid being equal to the gross amount; and (b) shall be reported in the year of payment as non-wage income to the Settlement Class Members on a Form 1099 and on such other state or local tax reporting forms as may be required by law. MBS shall be responsible for issuing all applicable tax forms to the Settlement Class Members. As to the payments reported as alleged non-wage income, the Settlement Class Members agree to indemnify and hold harmless the Released Parties for any taxes due or owing by the Settlement Class Members on such payments. Other than as set forth above, the Defense Entities will not withhold from the Settlement Payments to the Settlement Class Members any deductions, withholdings, or additional payments, including, without limitation, medical or other insurance payments or premiums, employee 401(k) contributions or matching employer contributions, wage garnishments, or charity withholdings. Any amount paid to Settlement Class Members shall not create any credit or otherwise affect the calculation of any deferred compensation, benefit, pension, or other compensation or benefit plan provided by the Defense Entities, and no payment made pursuant to this Agreement will be considered as "compensation" under any pension, savings, retiree or other plan if applicable, or otherwise require any contribution or award under any such plan, or otherwise modify benefits, contributions, or coverage under any other employee benefit plan or program.

   2.2. Other than the withholding and reporting requirements set forth above, the Settlement Class Members shall be solely responsible for the reporting and payment of their share of any federal, state, and/or local income tax or other tax or any other withholdings, if any, on any of the payments made pursuant to this Agreement. The Released Parties make no representation, and it is understood and agreed that the Released Parties have made no representation, as to the taxability of any Settlement Class Members' Settlement Payment, the payment of the Cost and Fee Award, or the payment of the Service Award.

**3.**  <u>**Dismissal of the Lawsuit**</u>

   3.1. Class Counsel shall file an Unopposed Motion for Approval of Settlement Agreement and Release and Stipulation of Dismissal of Lawsuit with Prejudice (the "Motion")

within three (3) business days of the execution of this Agreement. The Defense Entities will not unreasonably withhold consent to the Motion. The Settling Parties further agree to prepare and effectuate any other documents that are needed to obtain approval of the Agreement and dismissal of the Lawsuit.

      3.2.    A decision by the Court not to grant the Motion, or a decision by the Court to enter an order granting the Motion with modifications (other than modifications concerning the proposed amount of the Cost and Fee Award or the amount of the Service Award) that any of the Settling Parties determines in their reasonable and good faith judgment to be material, will be discretionary grounds for that Settling Party to terminate this Agreement by providing written notice to the other Settling Party and the Court within fourteen (14) calendar days of receipt of the Court's decision.

## 4.    <u>Timing of Payment to Settlement Class Members</u>

      4.1.    Class Counsel shall provide W-2 and W-9 forms for all individuals listed in Exhibit 1 as well as a W-9 for Class Counsel. The Defense Entities shall have no obligation to begin issuing payments until all such documents have been received from Class Counsel.

      4.2.    Within thirty (30) calendar days of Court approval <u>and</u> Class Counsel's delivery of W-2s and W-9 as contemplated in Section 4.1, MBS shall mail to Class Counsel the Settlement Payments to the Settlement Class Members. Class Counsel shall, in turn, mail the Settlement Payments to the Settlement Class Members at their last known address identified in Exhibit 1. MBS shall issue two checks to each Settlement Class Member in the amounts set forth in Exhibit 2, subject to applicable withholdings as contemplated in Section 1.2.

      4.3.    Checks issued to the Settlement Class Members pursuant to this Agreement shall remain negotiable for a period of one hundred and twenty (120) calendar days from the date of mailing and may thereafter be canceled if not cashed at that time. Settlement Class Members who fail to negotiate and/or deposit their Settlement Payments during the negotiable period shall, like all other Settlement Class Members, remain subject to the terms of this Agreement.

      4.4.    Nothing herein shall be construed to prevent Class Counsel from contacting the Settlement Class Members to inform them of the expiration of their Settlement Payment.

      4.5.    Class Counsel shall promptly provide Defense Counsel with written confirmation of mailing of the Settlement Payments.

      4.6.    Class Counsel shall provide Defense Counsel with the following information between one hundred and twenty-one (121) and one hundred and thirty (130) calendar days after checks are issued: (the names of all Settlement Class members whose Settlement Payment checks were returned or otherwise undeliverable.

      4.7.    All funds from checks not cashed timely will revert to MBS.

5.      **Releases**

5.1.    Upon the Effective Date, each of the Settlement Class Members who has received a Settlement Payment, regardless of whether such Settlement Payment is ultimately negotiated and/or deposited, on behalf of themselves and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to have fully, finally, and forever released, dismissed, with prejudice, relinquished, and discharged all Released Claims.

5.2.    Upon the Effective Date, the Class Representative shall also be deemed to have fully, finally, and forever released, dismissed, with prejudice, relinquished, and discharged all of Class Representative's Released Claims.

5.3.    The releases in 5.1 and 5.2 are conditional and shall only take effect unconditionally upon the Effective Date.

6.      **Payment of Cost and Fee Award and Service Award**

6.1.    Both the Cost and Fee Award and the Service Award shall be paid from the Maximum Settlement Amount. MBS shall issue payments for the full approved amount of the Cost and Fee Award and the Service Award at the same time that it issues the payments contemplated in Section 4. The Class Representative and Class Counsel, on behalf of themselves and all Settlement Class Members, agree that they shall neither seek nor be entitled to any additional costs, attorneys' fees, or awards under any theory. The Class Representative and Class Counsel further agree that they shall be responsible for justifying the amounts of the Cost and Fee Award and the Service Award to the Court and shall submit, as appropriate, the necessary materials to justify these awards.

6.2.    MBS will report the Service Award on a Form 1099, and any other required tax forms, and will provide the required forms to the Class Representative and to the pertinent taxing authorities as required by law. MBS will report the Cost and Fee Award on a Form 1099 to Class Counsel. To the extent that the Service Award may subsequently be determined by the IRS to be wages subject to tax withholding, the Class Representative agrees to indemnify the Released Parties from any liability that they may incur from a failure to make such withholding.

6.3.    Class Counsel assumes full responsibility for paying all federal and state taxes due as a result of receiving the Cost and Fee Award. Class Counsel further agree to indemnify and hold harmless the Released Parties for any taxes found to be due or owing related to the payment of the Cost and Fee Award.

6.4.    Any remaining or un-awarded portion of the Service Award or the Cost and Fee Award shall revert to MBS along with any other reversion to MBS remitted pursuant to Section 4.7.

7.      **Administrative Costs**

7.1.    MBS shall be responsible for paying all reasonable costs associated with preparing the Settlement Payments and remitting the Settlement Payments to Class Counsel pursuant to the terms of this Agreement, including the costs associated with mailing the Settlement

Payments to Class Counsel. Class Counsel shall be responsible for paying all reasonable costs associated with mailing the Settlement Payments to the Settlement Class Members. Class Counsel may deduct such mailing costs from the Maximum Settlement Amount.

7.2.    In the event that either party takes the position that the other party is not administering the settlement in accordance with the terms of this Agreement, counsel for both parties shall meet and confer prior to raising any such issue with the Court.

**8.    Termination of Settlement**

8.1.    This Agreement, except for those provisions relating to non-admissibility and non-admission of liability, shall be deemed null and void, its terms and provisions shall have no further force and effect with respect to the Settling Parties and it shall not be used in the Lawsuit or in any other proceeding for any purpose, and any order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc* in the event that any of the following occurs: (1) the Agreement is not approved in its entirety by the Court, excluding modifications that the Defense Entities determine in their reasonable and good faith judgment to not be material modifications; (2) the settlement set forth in this Agreement is terminated, cancelled, declared void, or fails to become effective in accordance with its terms; or (3) the Effective Date does not occur for any reason.

8.2.    The Defense Entities each shall have the absolute discretionary right to terminate this Agreement and the terms set forth in this Agreement in the event that any of the following conditions occur:

8.2.1.    In the event that this Agreement is construed in such a fashion that would require either of the Defense Entities, separately or jointly, to pay: (i) more than the Maximum Settlement Amount; and/or (ii) any amount(s) not expressly provided for in this Agreement; or

8.2.2.    In the event that the Class Representative or Class Counsel breach this Agreement.

8.3.    To the extent that either of the Defense Entities chooses to exercise the right to terminate this Agreement, it must do so through written notice to Class Counsel.

8.4.    Notwithstanding any other provision of this Agreement, no order of the Court, or modification or reversal on appeal of any order of the Court, reducing the amount of the Cost and Fee Award or the Service Award or eliminating these awards shall constitute grounds for cancellation or termination of this Agreement or grounds for limiting any other provision of the Agreement.

**9.    Confidentiality of Agreement**

9.1.    Other than as may be necessary to obtain Court approval of the Agreement and dismissal of the Lawsuit, Class Counsel, the Settlement Class Members, and all of their respective agents agree to keep the terms and existence of this Agreement confidential and agree not to disclose the terms or existence of this Agreement to any third parties, including, but not

limited to, the media, the press, or any current or former employees of any of the Released Parties, or on any websites or blog or through social media. Class Counsel shall take all necessary and appropriate steps to advise all Settlement Class Members of their confidentiality obligations under this Agreement.

9.2.    Nothing in this Agreement, including this Section 9, restricts or prohibits Settlement Class Members from initiating communications directly with, responding to any inquiries from, providing testimony before, providing confidential information to, reporting possible violations of law or regulation to, or from filing a claim or assisting with an investigation directly with a self-regulatory authority or a government agency or entity, including the U.S. Equal Employment Opportunity Commission, the Department of Labor, the National Labor Relations Board, the Department of Justice, the Securities and Exchange Commission, the Congress, and any agency Inspector General (collectively, the "Regulators"), or from making other disclosures that are protected under the whistleblower provisions of state or federal law or regulation. However, to the maximum extent permitted by law, Settlement Class Members waive their right to receive any individual monetary relief from the Defense Entities or any others covered by the Released Claims, regardless of whether Settlement Class Members or another party has filed them, and in the event a Settlement Class Member obtains such monetary relief the Defense Entities will be entitled to an offset for the payments made pursuant to this Stipulation. This Stipulation does not limit Settlement Class Members' right to receive an award from any Regulator that provides awards for providing information relating to a potential violation of law. Settlement Class Members do not need the prior authorization of the Defense Entities to engage in conduct protected by this paragraph, and Settlement Class Members do not need to notify the Defense Entities that they have engaged in such conduct. It is further understood that this paragraph and its subparagraphs are not intended to restrict Settlement Class Members' legal right to discuss the terms and conditions of their employment. Please take notice that federal law provides criminal and civil immunity to federal and state claims for trade secret misappropriation to individuals who disclose a trade secret to their attorney, a court, or a government official in certain, confidential circumstances that are set forth at 18 U.S.C. §§ 1833(b)(1) and 1833(b)(2), related to the reporting or investigation of a suspected violation of the law, or in connection with a lawsuit for retaliation for reporting a suspected violation of the law.

## 10.    **Miscellaneous Provisions**

10.1.    The Defense Entities' only obligations to Class Counsel, the Class Representative, and the Settlement Class Members are set forth in this Agreement.

10.2.    This Agreement compromises claims that are contested in good faith, and it shall not be deemed an admission by any of the Settling Parties as to the merits of any claim or any potential defense. The Settling Parties agree that the amounts paid in connection with this Agreement and the other terms of the settlement were negotiated in good faith by the Settling Parties and reflect an Agreement that was reached voluntarily after consultation with competent legal counsel with respect to a *bona fide* dispute regarding alleged wages due.

10.3.    The Released Parties specifically and generally deny any and all liability or wrongdoing of any sort with regard to any of the claims asserted in the Lawsuit and make no concessions or admissions of liability of any sort. Neither this Agreement nor any act performed

or document executed pursuant to, or in furtherance of, this Agreement is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claims or the wrongdoing or liability of the Released Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal for any reason.

10.4.    This Agreement constitutes the entire agreement among the Settling Parties hereto regarding the subject matter discussed herein, and no representations, warranties, or inducements have been made to any party concerning this Agreement other than the representations, warranties, and covenants contained and memorialized herein.  Except as otherwise explicitly provided herein, each Settling Party shall bear its own fees and costs.

10.5.    Class Counsel, on behalf of the Settlement Class Members, represents that, after consultation with and approval of the Class Representative, they are expressly authorized by the Class Representative to take all appropriate action required or permitted to be taken by the Class Representative pursuant to this Agreement to effect its terms, and are also expressly authorized to enter into any modifications or amendments to this Agreement on behalf of the Settlement Class Members that they deem appropriate, upon the Settling Parties' mutual written consent to any such modifications or amendments.  Similarly, Defense Counsel represents that they are expressly authorized to take all appropriate action required or permitted to be taken by the Defense Entities pursuant to this Agreement to effect its terms, and also are expressly authorized to enter into any modifications or amendments to this Agreement on behalf of the Defense Entities that they deem appropriate, upon Class Counsel's, on behalf of the Settlement Class Members, mutual written consent to any such modifications or amendments.

10.6.    This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

10.7.    Whenever this Agreement requires or contemplates that a Settling Party shall or may give notice to the other Settling Party, notice shall be provided by e-mail, facsimile, and/or next-day (excluding Sundays and Court holidays) express delivery service as follows:

(i)  If to the Defense Entities, then to:

Paulo B. McKeeby
Michael A. Correll
REED SMITH LLP
2850 N. Harwood Street
Suite 1500
Dallas, TX 75201
pmckeeby@reedsmith.com
mcorrell@reedsmith.com

(ii)  If to Class Representative , then to:

Gordon E. Jackson
J. Russ Bryant
Paula R. Jackson
JACKSON, SHIELDS, YEISER,  HOLT,
OWEN & BRYANT
262 German Oak Drive
Memphis, TN 38018
gjackson@jsyc.com
rbryant@jsyc.com
pjackson@jsyc.com

10.8.    This Agreement shall be binding upon and inure to the benefit of the Settling Parties and their respective heirs, trustees, executors, administrators, successors, and assigns and the Released Parties; but this Agreement is not designed to and does not create any third party beneficiaries, either express or implied.

10.9.    The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Agreement, and all Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Agreement.  Any action to enforce this Agreement shall be commenced and maintained only in this Court.

10.10.  The Settling Parties agree and understand that there shall be no injunctive relief included as part of any Court order as to them.

10.11.  This Agreement shall be considered to have been negotiated, executed, and delivered, and to have been wholly performed, in the State of Colorado, and the rights and obligations of the Settling Parties shall be construed and enforced in accordance with, and governed by, the substantive laws of the State of Colorado without giving effect to that State's choice of law principles.

10.12.  The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either Settling Party.  No Settling Party shall be deemed the drafter of this Agreement.  The Settling Parties acknowledge that the terms of this Agreement are contractual and are the product of arms-length negotiations between the Settling Parties and their counsel.  Each Settling Party and their counsel cooperated in the drafting and preparation of this Agreement.

10.13.  Neither Class Counsel nor any other attorneys acting for, or purporting to act for, the Settlement Class Members may recover or seek to recover any amounts for attorneys' fees, costs, awards, or other disbursements from the Maximum Settlement Amount or otherwise from the Released Parties except as expressly provided herein.

10.14.  This Agreement may not be changed, altered, or modified, except in writing signed by the Settling Parties and approved by the Court.

10.15.  Paragraph titles or captions contained in this Agreement are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement, or any provision thereof.

*[remainder of page intentionally left blank]*

12

IN WITNESS WHEREOF, the Settling Parties, Class Counsel, and Defense Counsel execute this Agreement as follows:

**PLAINTIFF:** _Randy Porter_                              Date: 03-17-2021 , 2021
Randy Porter

**CLASS
COUNSEL:** _____    Date: _____, 2021
J. Russ Bryant
JACKSON, SHIELDS, YEISER, HOLT, OWEN & BRYANT
262 German Oak Drive
Memphis, TN 38018

**DEFENSE ENTITIES**

_____    Date: _____, 2021
BASF Corporation
By:

_____    Date: _____, 2021
Master Builder Solutions US LLC and
Master Builders Solutions Construction Systems US, LLC
By:

**DEFENSE COUNSEL:**    _____    Date: _____, 2021
Michael Correll
REED SMITH LLP
2850 N. Harwood Street, Suite 1500
Dallas, Texas 75201

IN WITNESS WHEREOF, the Settling Parties, Class Counsel, and Defense Counsel execute this Agreement as follows:

PLAINTIFF: _Randy Porter_ Date: 03-17-2021 , 2021

Randy Porter

CLASS
COUNSEL: _____ Date: _____ , 2021

J. Russ Bryant
JACKSON, SHIELDS, YEISER, HOLT, OWEN & BRYANT
262 German Oak Drive
Memphis, TN 38018

DEFENSE ENTITIES

_Lynette Papushak_ Date: March 30, 2021

BASF Corporation
By: Lynette Papushak

_Konrad Wernthaler_ Date: March 26, 2021

Master Builder Solutions US LLC and
Master Builders Solutions Construction Systems US, LLC
By: Konrad Wernthaler

DEFENSE COUNSEL: _Michael Correll_ Date: **April 6** , 2021

Michael Correll
REED SMITH LLP
2850 N. Harwood Street, Suite 1500
Dallas, Texas 75201

**EXHIBIT 1**
**LIST OF SETTLEMENT CLASS MEMBERS**

1.  Randy Porter*
2.  Anthony Perez
3.  Danny Hubler
4.  Eli Collins
5.  Donald Quiett
6.  Glade Meyer
7.  William Marean
8.  Daniel Ybarra
9.  Daniel Muniz
10. Yves Goma
11. Thomas Martinez
12. Tamunoimi Ibama
13. Aaron Bannon

*Mr. Porter is also the Class Representative.

**EXHIBIT 2**
**SETTLEMENT PAYMENT SCHEDULE**

| NAME | WAGE PAYMENT | NON-WAGE PAYMENT |
|---|---|---|
| 1.  Randy Porter | $403.60 | $403.60 |
| 2.  Anthony Perez | $125.22 | $125.22 |
| 3.  Danny Hubler | $309.45 | $309.45 |
| 4.  Eli Collins | $564.96 | $564.96 |
| 5.  Donald Quiett | $229.88 | $229.88 |
| 6.  Glade Meyer | $187.50 | $187.50 |
| 7.  William Marean | $138.94 | $138.94 |
| 8.  Daniel Ybarra | $709.73 | $709.73 |
| 9.  Daniel Muniz | $670.94 | $670.94 |
| 10. Yves Goma | $404.38 | $404.38 |
| 11. Thomas Martinez | $259.88 | $259.88 |
| 12. Tamunoimi Ibama | $403.50 | $403.50 |
| 13. Aaron Bannon | $573.02 | $573.02 |

Service Award: $2,250.00

Costs and Fees Award: $20,288.00



# Audit Trail

## Document Details

| | |
|---|---|
| **Title** | BASF CO - Settlement Agreement |
| **File Name** | BASF_Porter - Settlement Agreement (002).pdf |
| **Document ID** | 98f60a2267ff475fa084e0eff8d0221d |
| **Fingerprint** | 7c105de5a7be1f77cad87ab814eaa26f |
| **Status** | Completed |

## Document History

| | | |
|---|---|---|
| **Document Created** | Document Created<br>Fingerprint: 7c105de5a7be1f77cad87ab814eaa26f | Mar 17 2021<br>11:01AM<br>America/Chicago |
| **Document Sent** | Document Sent to Randy Porter (randyporter9078@comcast.net) | Mar 17 2021<br>11:01AM<br>America/Chicago |
| **Document Viewed** | Document Viewed by Randy Porter (randyporter9078@comcast.net)<br>IP: 71.196.141.58 | Mar 17 2021<br>11:03AM<br>America/Chicago |
| **Document Viewed** | Document Viewed by Randy Porter (randyporter9078@comcast.net)<br>IP: 104.47.32.254 | Mar 17 2021<br>11:10AM<br>America/Chicago |
| **Document Viewed** | Document Viewed by Randy Porter (randyporter9078@comcast.net)<br>IP: 71.196.141.58 | Mar 17 2021<br>11:10AM<br>America/Chicago |
| **Document Viewed** | Document Viewed by Randy Porter (randyporter9078@comcast.net)<br>IP: 40.94.226.28 | Mar 17 2021<br>11:11AM<br>America/Chicago |
| **Document Signed** | Document Signed by Randy Porter (randyporter9078@comcast.net)<br>IP: 71.196.141.58 | Mar 17 2021<br>11:13AM<br>America/Chicago |
| **Document Completed** | This document has been completed.<br>Fingerprint: 6dcaf8d333913b44c9ba894c876f3a90 | Mar 17 2021<br>11:13AM<br>America/Chicago |

Processed by *eversign*